# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4113 | **DATE** | 1/18/2001 |
| **CASE TITLE** | Andrew Sudicky vs. Allied Tube & Conduit Corp.,etal | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Defendants' motions for summary judgment (42-1) and (44-1) are denied. The status hearing and for filing of the joint pretrial order set for 1/23/01 is stricken. Parties are to file the joint pretrial order on 2/6/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 19 2001 | |
| | Notified counsel by telephone. | | date docketed | 62 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 1/18/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | | | | |
| GL | courtroom deputy's initials | DOCKETING 01 JAN 18 AM10:11 | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

ANDREW SUDICKY,                          )
                                         )
       Plaintiff,                    )    No. 99 C 4113
                                         )
   v.                                    )
                                         )
ALLIED TUBE & CONDUIT CORP. and UNITED   )    **DOCKETED**
STEELWORKERS OF AMERICA, HARVEY          )
LOCAL 6939,                              )    JAN 1 9 2001
       Defendants.                   )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Defendants Allied Tube & Conduit Corp. ("Allied") and United Steelworkers of America, Harvey Local 6939 (the "Union") have moved for summary judgment against plaintiff Andrew Sudicky pursuant to Fed.R.Civ.P. 56. For the following reasons, the motions are denied.[1]

Sudicky sued the defendants under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Allied breached its collective bargaining agreement ("CBA") with the Union when it failed to award Sudicky a first shift hydraulic repairman position for which he bid, and that the Union breached its duty of fair representation toward Sudicky by refusing to process his grievance of the issue. This type of claim – alleging a breach of a CBA by an employer as well as the breach of the duty of fair representation by the Union – is known as a "hybrid 301 claim" under the LMRA. Sudicky must prove both prongs of his claim in order to succeed. *See Crider v. Spectrulite Consortium, Inc.,* 130 F.2d 1238, 1241 (7th Cir. 1997). If he fails to carry his burden with respect to one of the two prongs, his claim will fail. *Id.*

Before we can review the legal merits of this case, we must determine whether there are any issues of material fact which would bar the grant of summary judgment. Fed.R.Civ.P. 56(c). The parties' Rule 56.1 statements are fairly consistent with regard to the major issues, but they disagree

---

[1] In order to simplify matters, we will refer to Allied and the Union as a single party, unless noted, since their positions are substantively the same.

about the correct interpretation and relevance of certain facts, especially with regard to the CBA and how it operates. For the reasons stated in this opinion, we deny summary judgment because we find there is a dispute of material fact concerning the application of section 34.3. In explaining our reasoning, we set forth the undisputed facts as we understand them from the parties' briefs, pointing out those areas of ambiguity that bar summary judgment.[2]

In February 1999, Sudicky worked as a third-shift hydraulic repairman at Allied. On February 16, 1999, Allied posted an opening for a first-shift hydraulic repairman, a position for which Sudicky unsuccessfully bid. Sudicky contends that a particular portion of the CBA – section 8.12 – mandated that he receive the job. Section 8.12 is entitled, LIMITATION OF SHIFT CHANGES, and states: "An Employee may change his or her shift in the classification only if an opening occurs on the shift desired and then only twice in each contract year."

Allied counters that section 8.12 merely limits the number of times that an individual may change shifts within a particular classification if there is an opening, and that the awarding of bids is governed by CBA sections 8.1, 8.2, and 8.3:

> 8.1 – SENIORITY. Seniority is an Employee's length of continuous service with the Company [Allied] in years, months and days. In the event of promotion (except to supervisors), demotion, transfer and increase or decrease of the work force, preference shall be given to Employees on a **plant-wide** seniority basis and the ability to do the work available. If a question is raised regarding the ability of a senior Employee (except with regard to the filling of vacancies), it may be taken up by the Union under the grievance procedure. (emphasis added)

> 8.2 – JOB BIDDING. Any permanent job vacancy shall be posted for a period of three (3) days excluding Saturday, Sunday, and holidays. Any Employee shall be eligible to bid for the vacancy and shall apply in writing and deposit the bid in the bid box no longer than three (3) days excluding Saturday, Sunday and holidays after the first day of posting. The opening will be filled by selecting a bidding Employee on the basis of (1) Seniority, (2) Ability to learn the job, and (3) Physical fitness to do the work. . .

> 8.3 – JOB POSTING. All permanent job vacancies must be posted within a 24-hour period from the time they become vacant excluding Saturdays, Sundays, and Holidays.

---

[2] Unfortunately, the parties spend the bulk of their time arguing about one particular section of the CBA (§8.12) – even though our review shows that the parties are in substantial agreement about the clause – and do not adequately explain another section (§34.3) which we find much more material to our analysis.

Allied explains that because Sudicky was not the most senior bidder for the position, it was not awarded to him. Actually, there were two positions awarded, although Allied only posted one opening.[3] Sudicky does not disagree that the first successful bidder had more seniority, but argues that the second successful bidder – an employee named Barry Tyler – should not have been given the second job. As far as we can tell, Sudicky's reasoning is as follows:

Tyler had completed his four year apprenticeship for hydraulic repairman on February 6, 1999 and become a full status hydraulic repair journeyman on that date. Allied posted the open hydraulic repairman position on February 16, 1999, which we assume was within 24-hours of the position becoming open, pursuant to CBA section 8.3. Sudicky contends that because there were apparently no open hydraulic repairman positions on the exact day Tyler graduated from the apprenticeship program, section 34.3 of the CBA required that he be immediately "sent back" to the department from which he had originally worked.[4] This move would have left Sudicky as the most senior individual within the hydraulic repair classification, and he should have been allowed to "8.12" the position – that is, switch from the third shift to the first – before anyone outside the classification could bid on any open positions.

As support for his position, Sudicky points to both section 34.3, as well as to the previous experience of another employee, Ray Gorny.[5] Gorny contends that several years earlier, he had tried

---

[3] Sudicky argues that Allied's failure to post both positions constituted a breach of the CBA, section 34.4, which requires all available positions to be posted pursuant to section 8.3. However, even if true, the failure did not negatively impact Sudicky, but merely made available a second position, for which Allied selected the second most senior bidder, who was also not Sudicky.

[4] Section 34.3 is entitled SURPLUS GRADUATES, and states, "If upon completion of the apprentice program no vacancy exists in the classification for which the apprentice was trained, he will be assigned to his former classification or a related non-craft job, seniority permitting and shall not receive a rate less than that of the last period of his apprenticeship."

[5] Although Allied contends that Gorny's testimony about his situation is neither relevant nor reliable, they do not counter his testimony or dispute it with their own evidence. Thus, we will use it to the extent it helps explain Sudicky's position and theory of the case. However, we agree with Allied that by itself, the Gorny incident – which occurred three or four years prior to Sudicky's

3

to bid his way back into the welder classification from the hydraulic classification, but that he was not allowed to bid on a welder position until all of the employees within the welder classification had had the chance to change shifts pursuant to section 8.12, leaving Gorny with whatever shift was left. Sudicky's argument is that, just as Gorny was shut out from bidding for a position in a different classification until those within the class were allowed to select the shift they wanted, Sudicky should have been allowed to switch shifts before Tyler was given the job. This argument rests on the assumption that Tyler had been wrongly retained in the hydraulic repairman classification during the ten days after the completion of his apprenticeship when there was no vacancy posted.

Allied argues that Tyler was legitimately retained in the hydraulic department for the ten day period between the completion of his apprenticeship and the posting of the new positions, and that he received the position pursuant to CBA section 8.1 because he was the most senior bidder. What confuses the matter is that Allied insists that open jobs are granted only according to *plant-wide seniority*, yet admits in its briefs that it "limited the exercise of plant-wide seniority in making relevant decisions." (Allied Reply Brf., pg. 9). That is, Allied limited the individuals who could bid for an open position to those already in a particular classification, and then chose the successful bidders based on plant-wide seniority.[6]

So, despite their contentions to the contrary, the parties do agree that when a job becomes available for bidding, those individuals from within the classification are allowed to bid first, and of those bidders, the ones with the most plant-wide seniority will get the jobs. Section 8.12 only becomes relevant if one of the most senior bidders within a classification had already changed shifts twice in the current year.

---

claims – is not enough to establish a past practice of Allied.

[6] This practice, Allied explains, is why Gorny was unsuccessful in bidding back into the welder position in the shift of his choice; his seniority was not applicable from outside the classification.

Even though it may have seemed to Gorny and Sudicky that section 8.12 was operating to control the bidding, none of the undisputed evidence demonstrates that this is the case. Instead, the open job positions were filled based on CBA sections 8.1, 8.2 and 8.3, albeit with an unstated preference for bidders who were already within a particular classification.[7]

The reason we are unable to grant summary judgment concerns CBA section 34.3. There is a genuine dispute of material fact about whether and how its provisions were followed with respect to the awarding of the hydraulic repair position to Tyler. Neither party adequately explains why Tyler was retained in the hydraulic repair classification after his apprenticeship ended, or demonstrates whether his ten day wait for the posting was either a breach of the CBA or the ordinary course of business for Allied. Sudicky's explanation, that Allied breached the CBA because "the Union does not expect the company to invest money in training apprentices only to send them back to their former positions" (R. 56.1(b)(3)(B) statement, ¶ 122), is not supported by the deposition testimony cited. This deposition testimony – by Union grievance chairman Steve Kramer – establishes only his belief that Allied could use its discretion when deciding when to return an apprentice to his or her former classification.

But Allied's (and the Union's) explanation for the gap in time is no more clear. Allied devotes only a footnote to the issue in its reply brief, stating, *inter alia*, that because Tyler had graduated from the apprenticeship program ten days earlier:

> "[i]t cannot seriously be argued that the Union violated its duty by agreeing that Defendant Allied had the discretion to retain Tyler and Colbert in the hydraulic repair classification for the ten days between their graduation and date of the posting for the hydraulic repairman vacancies. Indeed, returning Tyler and Colbert to their previous classifications could forseeably have led to more disruption to other bargaining unit members. The Union's balancing of such competing interests among bargaining unit

---

[7] We note that nothing in the CBA states that a preference shall be given to a bidder who is the most senior on a plant-wide basis as long as that bidder is already within the classification, but if this is not the case, then Allied's argument does not make sense. Without such a preference, it would not matter whether or not Tyler was sent back to his old classification upon completion of the apprenticeship because he would still be the most senior bidder for the hydraulic job. But Allied specifically distinguishes Gorny's situation by explaining that Gorny was trying to bid from outside the classification, unlike Tyler, who was already within the classification, and thus, being able to bid from within a particular classification obviously carries some importance.

members is exactly the type of discretion which long has been recognized as being consistent with a Union's duty of fair representation."

Defendants do not offer any evidence that they could use their discretion to disregard a particular section of the CBA, especially when they provide no evidence that this reason was ever communicated to Sudicky, although he had complained about Tyler's retention to numerous individuals. The plain language of the CBA states that open positions shall be posted within 24 hours of their availability and that if there are no open positions in a particular classification at the end of an apprentice period, the graduates will be sent back to their original classification. In light of this plain language, we cannot accept defendants' bald statement that it had discretion to disregard the CBA. Thus, there is a question of material fact.

Deciding the legal merits of this case would require us to determine if the Union acted arbitrarily, discriminatorily, or in bad faith when deciding not to process Sudicky's grievance, *see Air Line Pilots v. O'Neill,* 499 U.S. 65, 67, (1991), and also whether Allied's actions breached the CBA. If Sudicky's grievance had no merit – that is, if Allied did not breach the CBA – then the Union cannot be held liable for failing to process it. *See Ooley v. Schwitzer Div., Household Mfg.,* 961 F.2d 1293, 1304 (7th Cir.), *cert. denied,* 506 U.S. 872 (1992). Since we are unable to determine from the facts before us whether Allied breached section 34.3 of the CBA, we cannot decide the merits of this case. Thus, we will deny the motion for summary judgment. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated   1/18/01

6